J-A13021-20

2020 PA Super 191

ERIC SCALLA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
KWS, INC., A MEMBER OF THE :
THIELE GROUP :
: No. 2003 EDA 2019
Appellant :

Appeal from the Order Entered April 12, 2019
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 171202802

BEFORE: BENDER, P.J.E., LAZARUS, J., and STRASSBURGER, J.[*]

OPINION BY LAZARUS, J.: **FILED AUGUST 11, 2020**

KWS, Inc. (KWS), appeals from the order, entered in the Court of
Common Pleas of Philadelphia County, denying its petition to open a default
judgment. After careful review, we affirm.

On March 30, 2016, Eric Scalla worked as a laborer for Rockland
Manufacturing. On that day, Scalla was assisting other employees to use an
overhead crane to move an excavation ripper. The excavation ripper was
attached to the overhead crane with a chain hook, which was manufactured
by KWS. At one point, the excavation ripper detached from the chain hook
and crushed Scalla's leg, which required a below-the-knee amputation.

On December 19, 2017, Scalla filed a products liability case against KWS
in Philadelphia County, seeking damages for his injuries. Scalla served his

_____

[*] Retired Senior Judge assigned to the Superior Court.

complaint on KWS via USPS certified mail, return receipt requested, and via regular mail, to KWS' Tulsa, Oklahoma office—its only United States office. On January 23, 2018, Elizabeth Roberts, Vice President of Operations and registered agent for KWS according to the Secretary of State of Oklahoma, signed for the USPS return receipt. Roberts, KWS' lone United States employee, set the package containing Scalla's complaint aside because she did not recognize the sender. Setting mail and packages aside, unopened, was Roberts' usual practice for KWS' mail received from senders that Roberts did not recognize. Roberts' superiors at KWS were familiar with her mail-opening practices.

On March 13, 2018, Scalla served KWS with a 10-day notice of intention to enter default judgment, pursuant to Pa.R.Civ.P. 237.1. Roberts received and signed for this notice as well—she signed both the FedEx package receipt and the USPS return receipt card, but, again, did not open the package. On March 26, 2018, Scalla filed a praecipe to enter default judgment, which was then entered in Scalla's favor and against KWS that same day.

On March 27, 2018, Scalla's counsel sent an email to KWS' company email address (sales@kwschain.com) notifying KWS that it was in default for failure to respond to Scalla's complaint. Roberts, who also monitored this email account, opened the email and alerted her superiors to its contents. The next day, KWS' counsel responded to the email stating that they were retained for the matter and would respond to the complaint the following day. On March 29, 2018, KWS removed the action to federal court on the basis of

- 2 -

diversity of citizenship jurisdiction, pursuant to 28 U.S.C. § 1332(a), and, on April 5, 2018, KWS filed an answer to Scalla's complaint in federal court. On April 19, 2018, Scalla filed a motion to remand the case back to state court, pursuant to 28 U.S.C. § 1446(b), on the grounds that more than thirty days had elapsed between KWS' receipt of notice of the complaint, which was effectuated on January 23, 2018. Because more than thirty days had elapsed, Scalla argued, the federal court no longer had jurisdiction to hear the case. On May 30, 2018, the federal court ordered that the parties engage in additional discovery on the issue of the sufficiency of the service of process, and ordered that the parties file supplemental briefs on that issue.

In an opinion filed November 30, 2018, the federal court agreed with Scalla and remanded the case back to state court, finding that: (1) under relevant Pennsylvania and Oklahoma law, Roberts was KWS' registered agent, at least between September 8, 2009 and May 31, 2018; (2) Roberts accepted service of process on behalf of KWS on January 23, 2018, under Pennsylvania law; (3) KWS' time for removal began when it was served with Scalla's complaint, on January 23, 2018; and (4) KWS' notice of removal to federal court was untimely filed because it was filed sixty-five days after Roberts accepted the complaint on behalf of KWS. *Scalla v. KWS*, 2018 WL 6271646 (filed November 30, 2018). On December 20, 2018, the federal court remanded the record to state court.

On December 31, 2018, the Court of Common Pleas of Philadelphia County acknowledged return of the record. On January 25, 2019, KWS filed

- 3 -

a petition to open the default judgment. The parties then filed a series of counseled replies and sur-replies, amounting to ten briefs in total, which caused the trial court "to endure a death by a thousand cuts from eight separate sur-reply briefs." Trial Court Opinion, 9/30/19, at 12.

In an order dated April 10, 2019, the trial court denied with prejudice KWS' petition to open the default judgment, and issued a thirty-six-page opinion in support thereof, finding that: (1) the federal court's rulings have collateral estoppel effect, which prevents KWS from re-litigating the issues of Roberts' authority and the validity of service of Scalla's complaint; (2) KWS' petition was not verified, and four of five of KWS' reply briefs were unverified, which required that the court could not consider the claims made within those filings, pursuant to Pa.R.C.P. 206.3; (3) KWS filed an inappropriate number of reply briefs; and (4) on the merits, KWS failed each of the prongs of the three-part test for opening a default judgment. *See* Trial Court Opinion, 4/10/19. KWS appealed, and KWS and the trial court timely complied with Pa.R.A.P. 1925. On September 30, 2019, the trial court issued a thirteen-page opinion, and, in so doing, incorporated and adopted its initial thirty-six-page opinion dated April 10, 2019.

On appeal, KWS presents the following issues for our review:

(1) Did KWS establish its right to open the default judgment against it by proving each of the three prongs for opening under controlling Pennsylvania law?

(2) Does Pennsylvania law obligate courts to balance the equities in considering petitions to open default judgments?

(3)     Did KWS establish its right to open the default judgment against it by proving that a balancing of the equities favored opening under controlling Pennsylvania law?

Appellant's Brief, at 6.

Our standard of review for a trial court's ruling on a petition to open a default judgment is well-settled:

A petition to open a default judgment is addressed to the equitable powers of the court and the trial court has discretion to grant or deny such a petition.  The party seeking to open the default judgment must establish three elements:  (1) the petition to open or strike was promptly filed; (2) the default can be reasonably explained or excused; and (3) there is a meritorious defense to the underlying claim.  The court's refusal to open a default judgment will not be reversed on appeal unless the trial court abused its discretion or committed an error of law.  An abuse of discretion is not merely an error in judgment; rather it occurs when the law is overridden or misapplied, or when the judgment exercised is manifestly unreasonable or the result of partiality, prejudice, bias or ill-will.  Moreover, this Court must determine whether there are equitable considerations that weigh in favor of opening the default judgment and allowing the defendant to defend the case on the merits.  Where the equities warrant opening a default judgment, this Court will not hesitate to find an abuse of discretion.

**Stabley v. A&P**, 89 A.3d 715, 719 (Pa. Super. 2014) (quoting **Castings Condominium Ass'n, Inc. v. Klein**, 663 A.2d 220, 222-23 (Pa. Super. 1995)) (internal brackets omitted).

KWS first claims that the trial court abused its discretion in finding that it failed to satisfy each of the three prongs for opening a default judgment. With regard to the first prong, KWS claims that, "the undisputed record shows that it promptly filed its [p]etition once the [t]rial [c]ourt regained jurisdiction following the [f]ederal [c]ourt's remand ruling." **See** Appellant's Brief, at 23-

24. KWS cites to our Court's decision in **Kelly v. Siuma**, 34 A.3d 86 (Pa. Super. 2011), and our Supreme Court's decision in **Queen City Elec. Supply Co., Inc. v. Soltis Elec. Co., Inc.**, 421 A.2d 174 (Pa. 1980), for the argument that,

> Pennsylvania courts have not established a specific time period within which a petition to open a default judgment must be filed to qualify as timely. Instead, the court must consider the length of time between discovery of the entry of the default judgment and the reason for delay. It is well established that where equitable circumstances exist, a default judgment may be opened regardless of the time that may have elapsed between entry of the judgment and filing of the petition to open.

Appellant's Brief, at 24 (internal citations, quotation marks, brackets, and original emphasis omitted). KWS claims that because it was actively litigating the case in federal court, there was good reason to delay filing its petition to open, since it was exercising "its 'important [] right' to remove the case to federal court on the basis of the parties' uncontested diversity of citizenship." **See id.** at 25 (internal citation and footnote omitted).

In **Kelly**, **supra**, we discussed the timeliness requirement of the first prong of the three-part test when considering a petition to open a default judgment:

> [w]ith regard to the first prong, whether the petition to open was timely filed, we note:

> > *The timeliness of a petition to open a judgment is measured from the date that notice of the entry of the default judgment is received.*

> > * * *

In cases where the appellate courts have found a 'prompt' and timely filing of the petition to open a default judgment, the period of delay has normally been less than one month. *See Duckson v. Wee Wheelers, Inc.*, [] 620 A.2d 1206 (Pa. Super. 1993) (one day is timely); *Alba v. Urology Associates of Kingston*, [] 598 A.2d 57 (Pa. Super. 1991) (fourteen days is timely); *Fink v. General Accident Ins. Co.*, [] 594 A.2d 345 (Pa. Super. 1991) ([] five days is timely).

[*US Bank N.A. v. Mallory*, 982 A.2d 986, 995 (Pa. Super. 2009)] (quotation omitted) (finding eighty-two day delay was not timely). []

*Kelly*, 34 A.3d at 92 (emphasis added).

Here, KWS claims that the trial court abused its discretion on the issue of prompt filing because: (1) KWS was exercising its important federal statutory right to seek removal based on diversity of citizenship;[1] (2) KWS filed a timely answer within one week of removing the case to federal court; (3) KWS filed its petition to open the default judgment within twenty-one days of the trial court's post-remand listing of the case for "assessment"; and (4) it would have been a waste of resources for KWS, Scalla, and the federal court, to file the petition to open the judgment in federal court, since there existed the prospect that the federal court's ruling on the petition would be void if the federal court remanded for lack of jurisdiction. *See* Appellant's Brief, at 31-33.

---

[1] In its opinion, the federal court denied Scalla's motion for attorney's fees connected with the remand. In support of its ruling, the federal court found that KWS had "an objectively reasonable basis for seeking removal," and that there was "no reason to believe that [KWS'] position (i.e., that it was not properly served with the [c]omplaint) [was] not asserted in good faith." *Scalla v. KWS*, 2018 WL 6271646, at 9 (filed November 30, 2018).

- 7 -

As an initial matter, we note that the March 26, 2018 docket entry of "Judgment Entered by Default," states, "Notice Under Rule 236 Given. Notice Under 237.1 Given." Such a notation is sufficient to prove that the prothonotary sent notice either to an unrepresented party or to KWS' attorney of record under Pa.R.C.P. 236 and 237.[2] *See Murphy v. Murphy*, 988 A.2d 703, 710 (Pa. Super. 2010) (holding docket entry stating, "NS ORDER FOR HEARING FILED; HEARING FIXED FOR JUNE 12, 2008 AT 8:30AM. DATE REPLACES PRIOR HEARING DATE OF MAY 2, 2008," satisfied notice requirement and established presumption that opposing party received filing); *see also Fraternal Order of Police, Lodge No. 5 v. City of Philadelphia*, 655 A.2d 666, 668 (Pa. Cmwlth. 1995) (holding docket entry stating, "Notice Under Rule 236" sufficient to establish notice was sent); *cf. Hepler v. Urban*, 609 A.2d 152, 154 (Pa. 1992) ("[A prothonotary's] notation [of 'N.S.'] on a blueback is *not* a 'notation in the *docket* that notice of entry of the order has been given.'") (emphasis in original). Under these circumstances, we find that the trial court did not err in determining that KWS received notice of the entry

_____

[2] Pennsylvania Rule of Civil Procedure 236(b) provides in relevant part that "[t]he prothonotary shall immediately give written notice by ordinary mail of the entry of any order, decree or judgment." *See* Pa.R.Civ.P. 236(b). Additionally, Pa.R.A.P. 108(b) provides that "[t]he date of entry of an order in a matter subject to the Pennsylvania Rules of Civil Procedure shall be the day on which the clerk *makes the notation in the docket* that notice of entry of the order has been given as required by Pa.R.Civ.P. 236(b)." *See* Pa.R.A.P. 108(b) (emphasis added). *See also Hepler v. Urban*, 609 A.2d 152, 154 n.2 (Pa. 1992).

of default judgment on March 26, 2018, when the prothonotary entered the appropriate notice in the docket.[3]

With regard to KWS' first argument on prompt filing—that KWS was actively litigating the matter in federal court and exercising its important federal right to do so—we note that there was nothing preventing KWS from filing its petition to open the default judgment in federal court during the pendency of the federal proceedings. Indeed, we have previously said that,

> [w]henever any action is removed from a State court to a district court of the United States, . . .[a]ll injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court. 28 U.S.C. § 1450. After removal, the federal court takes the case up where the State court left it off. ***Granny Goose Foods, Inc. v. Brotherhood of Teamsters and Auto Truck Drivers Local No. 70 of Alameda County***, 415 U.S. 423, 436 [] (1974) (quotation and citation omitted).
>
> The federal court accepts the case in its current posture as though everything done in state court had in fact been done in the federal court. ***See also Nissho-Iwai American Corp. v. Kline***, 845 F.2d 1300, 1303 (5th Cir. 1988) (quotation and citation omitted).

***Kurns v. Soo Line R.R.***, 72 A.3d 636, 639 (Pa. Super. 2013) (internal quotation marks omitted). Also, federal courts are empowered to set aside a default judgment that was entered in state court and prior to the removal to federal court. ***See Butner v. Neustadter***, 324 F.2d 783, 785-86 (9th Cir. 1963) ("The federal court takes the case as it finds it on removal and treats everything that occurred in the state court as if it had taken place in federal

---

[3] The trial court calculated that 304 days elapsed between March 26, 2018 and January 25, 2019, however, 306 days elapsed, in actuality.

court. Therefore, this default judgment should be treated as though it had been validly rendered in the federal proceeding. . . . [A] motion to set aside a default may be made in the district court under Fed. R. Civ. P. 60(b) because of mistake, inadvertence, surprise, or excusable neglect.").

Here, KWS is correct in noting that there was nothing that *required* it to file its petition in federal court. **See** Appellant's Brief, at 33. Nevertheless, *KWS was permitted to do so*. **See Kurns**, **supra**; **see also Butner**, **supra**. We conclude that the trial court did not abuse its discretion in finding it unpersuasive that KWS did not file the motion in federal court because it was exercising its "important federal right," given that a motion to set aside the default judgment could have been made in that court. **See Stabley**, **supra**.

Also, with regard to the "prompt filing" prong, KWS argues that it filed its petition to open within twenty-one days of the trial court's post-remand listing of the case for "assessment." **See** Appellant's Brief, at 31. This may be true, but is of no moment; our precedent is well-settled that, "[t]he timeliness of a petition to open a judgment is measured from *the date that notice of the entry of the default judgment is received*." **See Kelly**, **supra** (emphasis added). Here, more than three-hundred days elapsed after KWS received notice of the default judgment and before it filed its petition to open. **See Stabley**, **supra**.

Finally, KWS argues that its answer, filed in federal court less than ten days after the entry of default, should serve as the functional equivalent of a petition to open. First, this argument was never raised in the trial court.

Second, when KWS ultimately filed a petition to open the default judgment, it was filed pursuant to the three-part test, and made no mention of Rule 237.3. **See** Petition to Open Default Judgment, 1/25/19, ¶ 22. Claims raised for the first time on appeal are waived. **See** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.") As a result, we discern no abuse of discretion where the trial court found that KWS did not promptly file its petition to open the default judgment on January 25, 2019.[4] **See Stabley**, **supra**.

KWS also claims the trial court abused its discretion with regard to the second prong of the of the three-part test; the trial court found that KWS failed to provide a reasonable explanation or excuse for its default. **See** Trial Court Opinion, 4/10/19, at 30-33. One basis upon which the trial court relied for concluding that KWS failed to submit a reasonable explanation for its delay was that the court had no obligation to consider the contents of the eight sur-replies filed between the parties. The trial court stated:

> There is no provision in our rules for filing reply briefs to petitions to open default judgments. Petitions are ripe for disposition after the expiration of the response period. A judge has discretion to consider a reply brief as a matter of grace but not as of right.

---

[4] Since the three-part test is conjunctive and not disjunctive, we could end our analysis here. **See Stabley**, **supra** at 719. Because of the equitable nature of KWS' second and third claims on appeal, however, we will review all of the three-part test. **See id.** ("Moreover, this Court must determine whether there are equitable considerations that weigh in favor of opening the default judgment and allowing the defendant to defend the case on the merits. Where the equities warrant opening a default judgment, this Court will not hesitate to find an abuse of discretion.").

This [c]ourt finds it hard to understand how two law firm partners believed that it was appropriate or necessary to inundate the [c]ourt with five [] separate reply briefs on behalf of KWS. The [p]laintiff was forced to file four [] briefs in response. For the most part, each reply brief filed by KWS addressed issues raised in the [p]laintiff's original answer to the petition to open. All of those issues could—and should—have been addressed in KWS' first reply brief. Any new issues or factual allegations could not be raised in any of KWS'[] subsequent reply briefs. They should have been raised in the petition itself.

*Id.* at 13-14. The trial court further clarified its position as to why it would

not consider KWS' reply briefs in its opinion issued on September 30, 2019:

The court's original opinion cited three Pennsylvania Supreme Court and one recent Superior Court decisions that held that reply briefs cannot be used to raise new issues or to remedy the original brief's deficient discussion of an issue. This trial court recognized that those cases were discussing appellate procedure but believed, and still believes, that []the principles they espouse are equally relevant to reply briefs filed in the trial courts.[]

The usual course of events is that a lawyer files a motion, the opponent files an answer, and the first lawyer may file a reply. There is no provision in the Pennsylvania Rules of Civil Procedure or in the local Philadelphia Civil Rules that permitted KWS to file its sur-reply, sur-sur-reply, sur-sur-sur-reply, and sur-sur-sur-sur-reply. Further research revealed that the issue of sur-replies, sur-sur-replies, etc., is apparently one of first impression for Pennsylvania trial courts, although Pa.R.A.P. 2113(c) mandates that after a reply brief is filed, "no further briefs may be filed except with leave of court." The issue has been discussed at length by the federal courts. While federal court decisions are not binding on Pennsylvania courts, this [c]ourt found the reasoning of the federal cases discussed below to be very persuasive.

* * *

An endless volley of briefs and sur-replies occurred in the often-cited case of ***U.S. ex rel. Hockett v. Columbia/HCA Healthcare Corp.***, 498 F.Supp.2d 25 (D. D.C. 2007). The court set forth the standard of review as follows:

The decision to grant or deny leave to file a sur-reply is committed to the sound discretion of the court. If the

- 12 -

> movant raises arguments for the first time in his reply to the non-movant's opposition, the court will either ignore those arguments in resolving the motion or provide the non-movant an opportunity to respond to those arguments by granting leave to file a sur-reply.

[**Hockett**,] 498 F. Supp. 2d at 35.

A "popular mode of advocacy" in **Hockett** were motions seeking to strike filings or seeking leave to file sur-replies. [**Id.**] at 34. This left the "[c]ourt as the owner of what may be the world's first sur-sur-sur-reply, a position in which no [c]ourt should ever find itself." **Id.** at 35. The court granted the [p]laintiff leave to file the sur-sur-sur-reply because it responded to evidence first raised in HCA's reply. **Id.** The [c]ourt also was presented "with something it never thought it would see, a sur-sur-sur-sur-reply (hereinafter, 'reply'). All of these papers, particularly the reply, add very little that is new, and do not respond to any improper argument. We are now several steps removed from a substantive motion, and are faced only with filings about filings. *Eventually we reach a point where all this metapleading must stop*, and this is that point. The [m]otion ... is denied." **Hockett**, 498 F. Supp. 2d at 36 (emphasis added). []

The problem with KWS' fusillade of sur-reply briefs was they raised issues and facts that could have been, and should have been, raised either in KWS'[] petition or in its first reply brief. [Scalla] raised issues in his answer to the [p]etition that certainly warranted a reply by KWS discussing them. Instead of discussing all of those issues in one reply brief, however, KWS spread them out among four separate sur-reply briefs, which necessitated [Scalla] filing four of his own sur-reply briefs in response. Between February 27 and March 11, 2019, the court was forced to endure a death by a thousand cuts from eight separate sur-reply briefs.

For example, KWS did not deign to submit the affidavit of [Attorney] Galligan[] until KWS'[] second reply brief, i.e., its first sur-reply, on February 28th. The matters [Attorney] Galligan discussed all occurred in the month before the petition to open was filed; they were not newly-discovered after the first reply brief had been filed by KWS.

The matters set forth in the affidavit went to the heart of KWS'[] claim that the petition to open was timely filed. Timeliness was

the first of the three elements KWS had to prove to open the default judgment. The affidavit should have been filed as part of the petition to open to prove that the petition was filed timely. There should have been no difficulty in obtaining the affidavit in time for inclusion in the petition to open because [Attorney] Galligan is counsel of record for KWS in this case. After [Scalla's] answer to the petition disputed timeliness, the affidavit should have been included in KWS'[] first reply to [Scalla's] answer, not in its second reply. Counsel for KWS have never explained why they failed to include [Attorney] Galligan's affidavit in the petition to open or in their first reply to [Scalla's] answer to the petition.

Trial Court Opinion, 9/30/19, at 8-12 (internal citations and footnote omitted).

As stated above by the trial court, there is no provision under Pennsylvania law for filing reply briefs to petitions to open a default judgment.

Nevertheless, we note that our Supreme Court has stated:

Although the [Pennsylvania] Constitution does not enumerate every specific power inherent in courts and incidental to the grant of judicial authority under Article V, the Judicial Code serves to codify some of these non-particularized powers. Section 323 of the Judicial Code provides:

Every court shall have power to issue, under its judicial seal, every lawful writ and process necessary or suitable for the exercise of its jurisdiction and for the enforcement of any order which it may make and all legal and equitable powers required for or incidental to the exercise of its jurisdiction, and, except as otherwise prescribed by general rules, *every court shall have power to make such rules and orders of court as the interest of justice or the business of the court may require.*

42 Pa.C.S. § 323. Section 912 of the Judicial Code similarly establishes that every court of common pleas "shall have power to issue, under its judicial seal, every lawful writ and process . . . as such courts have been heretofore authorized by law or usage to issue[,]" and every judge of a court of common pleas "shall have all the powers of a judge or magisterial district judge of the minor judiciary." 42 Pa.C.S. § 912.

*In re Return of Seized Prop. of Lackawanna Cty*, 212 A.3d 1, 12 (Pa. 2019) (emphasis added).

Here, despite citing no binding precedent for refusing to consider the reply briefs filed by the parties, the trial court nevertheless had the authority to limit its consideration of the reply briefs. The court has the "power to make such rules and orders of court as the interest of justice or the business of the court may require." *See In re Return of Seized Prop. of Lackawanna Cty*, *supra*. It is evident that the parties' use of reply briefs placed an undue burden on the "business of the court[.]" *See id.* KWS' series of reply briefs added no claims that could not have been raised in earlier filings; and, as noted by the trial court, the common sense considerations underlying Pa.R.A.P. 2113(c), which governs the submission of appellate briefs, are "equally relevant" to briefs submitted in the trial court. *See* Trial Court Opinion, 9/30/19, at 9. Consequently, the trial court did not abuse its discretion in refusing to consider the contents of KWS' sur-reply briefs. *See Stabley*, *supra*.

Additionally, the trial court found there were no facts before it that supported opening the default judgment because KWS' petition to open was not verified, and because four of the five reply briefs it filed were also unverified. *See* Trial Court Opinion, 4/10/19, at 12.

Pennsylvania Rule of Civil Procedure 206.3 requires verification of a petition to open a default judgment. Rule 206.3 states, "A petition or an answer containing an allegation of fact which does not appear of record shall

- 15 -

be verified." Pa.R.C.P. 206.3. With regard to verification, we have previously stated that,

> the failure to verify a petition to open or strike a default judgment should not be routinely condoned. However, the error may be excused where it is inconsequential and not prejudicial. Moreover, courts should not be astute in enforcing technicalities to defeat apparently meritorious claims. . . . To determine whether the error is inconsequential and not prejudicial, we must examine the function of the allegation within the context of the petition to open.

**Penn-Delco Sch. Dist. v. Bell Atlantic-Pa, Inc.**, 745 A. 2d 14, 18 (Pa. Super. 1999) (internal citation, quotation marks, and brackets omitted).

In **Penn-Delco Sch. Dist.**, we excused a party's failure to verify the allegation that "counsel filed the petition to open immediately after discovering the default judgment" because that allegation was immaterial and not prejudicial. **See id.** In that case, we held the allegation was immaterial and the opposing party was not prejudiced because the petition to open was filed pursuant to Pa.R.C.P. 237.3, which states that so long as the petition to open is filed within ten days after the entry of the judgment on the docket, the petition may be granted if a meritorious defense is stated. **See id.** The petition to open in **Penn-Delco Sch. Dist.** was filed within the ten-day period, and as such, the unverified allegation was "mere surplusage." **See id.** at 19.

In declining to consider the unverified allegations in KWS' petition and reply briefs, the trial court stated the following in its opinion accompanying its order:

> The first, and only, document to contain a verification was KWS'[] third reply brief, filed March 6, 2019. That document, however,

cannot be considered by the [c]ourt because a reply brief, especially a third reply brief, cannot raise new facts or legal arguments that could—and should—have been raised in the original petition.

\*　　\*　　\*

KWS filed its second reply brief on February 28, 2019, which attached for the first time, an affidavit by defense counsel Thomas Galligan, Esq.

Based on that affidavit, KWS'[] attorneys claim that "only after this case was remanded did KWS' counsel notice a docket entry indicating that a default judgment was entered by the [c]ourt, which led KWS to file its [p]etition to [o]pen [d]efault [j]udgment." [Attorney] Galligan stated in his [a]ffidavit:

> 2. On Monday, December 3, 2018, I reviewed the online docket for this case to determine whether the matter had been remanded back to this [c]ourt. Upon reviewing the docket, I noticed for the first time that beneath the docket entry for [p]laintiff[']s [p]raecipe to [e]nter [d]efault [j]udgment was the language: "JUDGMENT IN FAVOR OF ERIC SCALLA AND AGAINST KWS[,] INC[.,] A MEMBER OF THE THIELE GROUP[,] FOR FAILURE TO FILE ANSWER WITHIN REQUIRED TIME. PRO-PROTHONOTARY. NOTICE UNDER RULE 236 GIVEN."
>
> 3. The foregoing language on the docket came as a surprise because neither KWS nor its counsel received any separate order or judgment entered by this [c]ourt in response to [p]laintiff[']s [p]raecipe to [e]nter [d]efault [j]udgment.

Galligan Affidavit[, 2/28/19, at] ¶ ¶2 & 3.

The [p]etition and its memorandum of law, and the first reply brief filed February 26, 2019, do not mention [Attorney] Galligan's discovery of the default on [December] 3, 2018. [Attorney] Galligan's discovery was first raised by KWS in its second reply brief filed on February 28, 2019. KWS has not alleged that it only discovered [Attorney] Galligan's proposed evidence between February 26th and 28th. Thus, the affidavit cannot be considered because a reply brief, especially a second reply brief, cannot raise new facts or legal arguments that could—and should—have been raised in the original petition.

- 17 -

Trial Court Opinion, 4/10/19, at 12, 24 (internal citations omitted).

Here, the instant facts can be distinguished from those in ***Penn-Delco Sch. Dist.*** In addition to KWS' failure to verify its petition to open the default judgment, KWS also failed to verify all of its reply briefs, except for its third reply brief. Additionally, KWS, unlike the petitioner in ***Penn-Delco Sch. Dist.***, did not file its petition to open the default judgment pursuant to Rule 237.3. Thus, KWS was required to satisfy all three prongs of the test for opening a default judgment, instead of only satisfying the meritorious defense prong; KWS' unverified allegations, therefore, are not "mere surplusage." ***See Penn-Delco Sch. Dist.***, ***supra*** at 19. The unverified allegations here at issue are material, and would prejudice Scalla if they were considered by the court. ***See id.*** Moreover, in looking at the allegation's "function within the context of the petition," ***see id.***, the allegation itself does not withstand scrutiny. In its response to Scalla's motion to remand, filed in federal court on March 3, 2018, KWS stated, "*Although a default judgment was entered against KWS by the Court of Common Pleas*, service was improper." Defendant's Response in Opposition to Plaintiff's Motion to Remand, 3/3/18, at ¶ 9 (emphasis added). The unverified allegation at issue is material, prejudicial, and lacks indicia of truthfulness; therefore, the trial court did not abuse its discretion, under these circumstances, in declining to consider the contents of the unverified petition and briefs. ***See Stabley***, ***supra***; ***see also Penn-Delco Sch. Dist.***, ***supra***.

Additionally, on this second "reasonable explanation" prong of the analysis, KWS argues that,

> the [t]rial [c]ourt ignores the undisputed facts that [] Roberts was the only employee of KWS in the United States; did not have a sophisticated understanding of legal mail or service of process; did not open any mail that appeared to be spam or from an unknown sender; and had no knowledge of the lawsuit until March 27, 2018.  And it disregards the undisputed fact that once [] Roberts—and KWS—learned of the lawsuit, KWS acted expeditiously to mount a vigorous defense and litigation strategy.

Appellant's Brief, at 45-46.

We addressed a similar argument in ***Autologic, Inc. v. Cristinzio Movers***, 481 A.2d 1362 (Pa. Super. 1984), where we stated,

> we find appellant's excuse is rendered no more reasonable because its reliance on its insurance company was through what it now characterizes as an "unsophisticated, low-level employee." The fact remains that it was this type of employee that appellant chose to give responsibility to for handling damage claims.  While it has been held that an employee's clerical error may constitute sufficient legal justification to open a default judgment, ***see e.g.***, ***Campbell v. Heilman Homes, Inc.***, [] 335 A.2d 371 ([Pa. Super.] 1975) (observing that [] employee's failure to forward [] complaint was not unlike [] clerical error), we do not believe the instant case falls within that category.  *Appellant gave Ms. Fahrer the responsibility not simply to forward in every case all papers she received to her superiors, but to make the decision whether or not there was a need to do so.  Thus, appellant's failure to respond to the complaint was not due simply to the inattentiveness of its employee, but to her conscious decision which it had empowered her to make.*  We do not find it unjust to hold appellant responsible for that decision.  If we were to hold otherwise, employers could cause interminable delays in litigation simply by intentionally choosing unqualified employees to handle claims brought against them.

***Id.*** at 1364 (emphasis added).

Indeed, during her deposition, Roberts stated that her superiors were aware of her mail-opening practices:

Q. Does the—the president, Mr. Kurz—is he aware that you don't open mail if you don't know who it's from?

A. Yes.

Q. And is he okay with that, as far as you know?

A. We are changing procedure, yes.

Q. What's the new procedure?

A. I open everything.

Q. Have you ever been reprimanded for not opening mail?

A. No.

Roberts Deposition, 7/12/18, at 39.

Here, like the appellant in **Autologic**, KWS argues that it should be excused for the error of its "unsophisticated" employee. Also, similar to the appellant in that case, KWS gave its employee both the responsibility of deciding whether to open mail, and the power of deciding whether to forward that mail to her superiors. Like, in **Autologic**, **supra**, it is similarly not "unjust to hold appellant responsible for that decision." **Id.** Consequently, we cannot find an abuse of discretion in the trial court's dismissal of this argument under the "reasonable explanation" prong of the three-part analysis. **See Stabley**, **supra**.

Finally, the third prong of the three-part test requires KWS to plead an arguably meritorious defense sufficient to justify relief if proven. **See Castings Condominium Ass'n v. Klein**, 663 A.2d 220, 224 (Pa. Super.

1995). KWS need not prove every element of the defense, however, it must plead the defense in precise, specific, and clear terms. *Id. See also Miller Block Company v. United States National Bank in Johnstown*, 567 A.2d 695, 700 (Pa. Super. 1989).

In *Castings Condominium Ass'n*, we stated that an averment was insufficient to establish a meritorious defense because it "summarily denie[d] any wrongdoing" and failed "to refute any of the allegations with particularity." *Id.* at 224. In its brief before this Court, KWS first argues that the trial court placed a burden on KWS in conflict with our precedent by requiring KWS to prove its defenses with "supporting facts." *See* Appellant's Brief, at 39. Second, KWS asserts that the trial court mischaracterized KWS' "detailed averments supporting its defenses as 'boilerplate.'" *Id.*

The trial court found that all of KWS' allegations were boilerplate statements that failed to establish a meritorious defense:

> KWS' principal defense is that service of the complaint was improper. ¶ ¶ 38-47 of Petition. That defense fails due to [the federal court's] conclusive ruling that the complaint was validly served upon KWS. The [p]etition specifies only these other defenses that were raised in KWS'[] federal court [a]nswer to [Scalla's c]omplaint:
>
>> 50. KWS'[] answer denies all material allegations and pleads numerous affirmative defenses, that, if proved at trial, will absolve it of liability. First, KWS denies that it manufactured the product which is the subject of [p]laintiff's lawsuit. Further, proof that KWS produced this product has not been presented.
>>
>> 51. If any product designed, manufactured, distributed and/or sold by KWS is, in fact, made the basis of this lawsuit (which is categorically denied), then KWS denies that this

product was in any way defective and/or unreasonably dangerous.

52. KWS averred that to the extent it manufactured the product at issue, this product was in all respects properly designed, manufactured, assembled, tested, inspected, distributed and/or sold, and the product departed KWS'[] control equipped with all elements necessary to make it safe and containing no elements making it unsafe, and was properly equipped with all necessary warnings and instructions for correct and safe use, operation, maintenance and servicing. No proof to the contrary has been presented.

53. Finally, in the further alternative, KWS averred that if any defect is found to have existed or exists in any KWS product made the basis of this lawsuit, which was again categorically denied, then KWS averred that any such defect was caused solely and wholly by the misuse, abuse, alteration, modification, damage or improper maintenance, repair, operation, handling, servicing, installation and/or contributory and comparative negligence, breach of duty and/or fault of others now unknown.

All of these defenses are boilerplate allegations devoid of any supporting facts that establish that they are genuinely meritorious and can be established at trial. They fail the meritorious defense test.

Trial Court Opinion, 4/10/19, at 35-36 (internal citation, quotation marks, and ellipsis omitted).

Here, we agree with the trial court, and find that KWS' defenses do not refute any of Scalla's allegations *with particularity*. **See Castings Condominium Ass'n**, 663 A.2d at 225. Instead, all of the defenses summarily state that KWS denies any wrongdoing. As such, the above averments are insufficient to raise a meritorious defense under the third prong of the three-part test for opening a default judgment. **See id**. Accordingly,

there was no abuse of discretion under this prong of the trial court's analysis. ***See Stabley***, ***supra***.

In turning to KWS' second and third issues on appeal—claims that relate to the equitable nature of the above three-part test—we have previously stated that,

> [w]e recognize the equitable nature of the trial court's task when deciding whether to open a default judgment. However, the trial court cannot open a default judgment based on the "equities" of the case when the defendant has failed to establish all three of the required criteria. In ***Provident Credit Corporation***[ ***v. Young***, 446 A.2d 257 (Pa. 1982)], the defendant seeking to open the default judgment established two of the three elements—she pled a meritorious defense to the plaintiff's complaint and offered a reasonable excuse for the default. [***Id.***] at 262-63. Under these circumstances, the Court concluded that it would be inequitable to deny the request to open the judgment simply because she did not promptly file the petition to open. The Court weighed the equities of the case and ruled in favor of granting the petition to open the judgment. [Appellant], on the other hand, has not established any of the three elements in the tripartite test. Therefore, we reject her argument that the "equities" weigh in her favor requiring that we open the default judgment.

***Castings Condominium Ass'n***, 663 A.2d at 225.

Here, KWS, like the defendant in ***Castings Condominium Ass'n***, argues that the equities required the court to open the default judgment. ***See*** Appellant's Brief, at 49-57. Nevertheless, KWS, also like the defendant in that case, failed to establish any of the three elements of the three-part test for opening a default judgment. Accordingly, we reject KWS' argument that the equities weigh in its favor with regard to opening the default judgment. ***See***

***Castings Condominium***, ***supra***; ***see also Seeger v. First Union Nat'l***

***Bank***, 836 A.2d 163, 167 (Pa. Super. 2003).

Order affirmed.

President Judge Emeritus Bender joins this Opinion.

Judge Strassburger files a Concurring Opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/11/2020